Curia, per
Butler, J.
The questions belonging to and fairly submitted to the jury, must be regarded by this court as satisfactorily settled by their verdict. So far as it regards the character of the possession from 1819 to 1832, a period of 13 years, the jury were bound to pass upon it, to this extent, at least; that for the last ten years of his life, Benjamin Whaley had not acquired a good title under the statute of limitations, by virtue of any adverse possession during that time. The finding necessarily establishes *231 that, in its inception, Benjamin Whaley’s possession was permissive and not adverse, and that for the three first years he held by privity of tenure with William Edings, under whom he had entered. It is the case of a tenant entering upon land, and holding by the sufferance of the landlord, without paying rent. Such a tenancy carries with it many incidents important in this case, and which will be hereafter noticed in their proper place. The tenant had not assumed such an adverse pbsition as to allow the statute to give him a good title at his death.. But it is said that at any time after the 30th of March, 1822, or within ten years before his death, Benjamin Whaley might have assumed such a position, and that his title would have been perfected by the operation of the statute, provided the possession of the administrators could be tacked to and regarded as a continuation of his possession. The circuit Judge held that the possession of the administrators could not be connected with that of their intestate, so as to make it perfect. If it could be shewn that this view of the Judge was material, a question of some apparent perplexity would be presented. But in the view which a majority of the court is disposed to take of the case, this point is wholly immaterial ; and should it be regarded as essentially involved in the judgment of the court, the circuit decision may well be sustained by a fair view of the evidence. After the 30th of March, 1822, or after the 20th of June, when Benjamin Whaley’s first wife died, there was no evidence to shew that the character of the possession had been changed from what it was in the beginning. The presumption of law is that it was the same, and that presumption must prevail in the absence of evidence. The morality of the law inculcates, and its provisions will enforce good faith in all the relations of life in which legal confidence has been reposed. One who enters upon land, acknowledging title in another, ought, in justice, to adhere to the original terms of his possession. It is an undoubted principle of the law, that a tenant cannot dispute the title of his landlord, either by setting up title in himself or another, during the existence of the lease or tenancy. The principle of estoppel applies to them, and operates in its full force to prevent the violation of the contract by which the tenant obtained and *232 holds possession. 7 Whea. 535. See also the cases of Watkins vs. Willisson, Law Journal, No. 1, 125; Wilson vs. Weathersby, 1 N. &. McC. 370. In this last case it was said and decided, “ that the evidence offered by the defendant was of a title acquired by him after he went into possession under the plaintiff, and before he gaye up possession. If he was at any time the tenant of the plaintiff, he continues so all the time, unless he had given up the possession.” There was no evidence here that Whaley ever gave up possession, or that he claimed to hold it differently from what he did in its origin, or the three first years of its duration. There was great reason, therefore, in holding that the possession of the administrators could not be connected to change the character of the original possession of Whaley in his life-time; the law presuming them to be the same, that is, the termination to be like the beginning. This view of the case would be wholly immaterial, if Whaley nevei did as,sume such a position as to dissolve the relation between himself and his landlord, and thereby entitle himself to the operation of the statute of limitations. During the continuance of an acknowledged lease, the tenant cannot set up title in himself to question the title of the landlord. This must always be the case where the lease is for a definite term of years. In such case the tenant must go out and disclaim the title of his landlord, and come in as any other stranger, before he can set up his title. Having forfeited his lease, he terminates its existence by his own act, and thereby becomes a disseizer and trespasser. Under such circumstances, the possession of the tenant becomes a tortious one by the forfeiture of his right. “ The landlord’s right of entry is then complete, and he may sue at any time within the period of limitations; but he must lay his devise of a day subsequent to the termination of the tenancy.” See the judgment of Baldwin, J., in the case of Watkins vs. Willisson. When the time of the tenancy has expired by its own limitation, the tenant is then a tenant at sufferance from year to year; and after notice to quit would be a trespasser, who could be sued in an action to try title. If the tenant continues to hold, without notice to quit, or without a disclaimer of tenancy on his part, he will be regarded as holding by the title of his *233 original landlord. And it is said by Chancellor Harper, in his argument of the case last referred to — and which, with little qualification, was adopted as the judgment of the court — that if a tenant, at the expiration of a term, sets up claim in himself, and even gives notice of it to his landlord, yet continues to pay rent, his recognition of the landlord’s title will prevent his possession being adverse; and further : “ if a party enter by bare permission, remain as a tenant at sufferance, paying no rent, the tenancy cannot .be determined by the tenant without notice to the landlord, ichatever claim the tenant may set up to himself or to others.” And this, for the obvious reason that the law will not permit one to lose his rights who has no means of knowing that they are usurped. It is always necessary that the rights of the party to be affected by the statute should be so far violated as to put it in his power to vindicate them by a proceeding at law. Before the tenant can occupy an adverse position, entitling him to. claim by adverse possession, he must disclaim his tenancy, and give notice of that fact to his landlord. He must become a trespasser, by doing something to shew that he holds the land against the consent of the owner or claimant. After that, there is nothing to prevent the owner from bringing his action to evict the wrong doer. A secret disclaimer, unknown to the landlord, will not do. The statute cannot run until the knowledge of the disclaimer is brought home to the landlord. In the case of Willisson and Watkins, such was the evidence: Willisson, the ancester of the defendant, who had'entered under Burdeaux, gave notice to his landlord that he claimed in his own right, and refused to pay rent; this was in 1792. In 1802 Willisson died, leaving his widow and children in possession. A year before that time, Ralph Spence Philips became interested in the land, in right of Burdeaux; and after the death of Willisson, demanded possession of the land from the widow; she refused positively to give it up, or to acknowledge Philips’s title, but held the land in the face of a litigation of ten years. In 1817 the land was sold at sheriff’s sale, as the property of Burdeaux, to foreclose a mortgage assigned to Philips; and Watkins, the purchaser, brought his suit, and was defeated in the Supreme Court of the United States, on the ground *234 that Willisson and his representatives having disclaimed Burdeaux’s title, with express, repeated, and even hostile notice to Burdeaux and Philips, they were protected by their adverse possession under the statute. Baldwin, J., who delivered the judgment of the court, says, in so many terms, that the statute did not commence to run till the knowledge was brought home to Burdeaux that Willisson was claiming against his title, for from that time a cause of action had accrued, as in the case of discovery of fraud committed by a trustee ; and the Judge uses this language: “ Why, then, should not the statute protect him as well as any other fraudulent trustee, from the time the fraud is discovered, or known to the landlord?”
I will venture to say, that no case has gone so far as to give a tenant a title by the operation of the statute, who has not made some open disclaimer of his tenancy, and given notice to his landlord of his hostile position. After a great lapse of time, and an omission to pay rent, a dissolution of the relation of landlord and tenant might be presumed. Such a presumption cannot arise in the case under consideration; for, from the finding of the jury, the presumption is the other way. In no part of the evidence does it appear that Benjamin Whaley ever gave William Edings to understand, much less did he give direct notice to him, that he had thrown off his tenancy, and intended to claim in his own right. There was no notice of that kind which would have authorized the jury to cometo a conclusion that Edings had any reason to believe that Whaley was holding differently from his other sons-in-law, Fripp and Chisolm. So far as regards Edings, their relations were the same; and it is his knowledge, and not Whaley’s designs, thát the jury were bound to consider. Would it do to go so far as to say that the jury might have inferred, or presumed that Edings had notice of Whaley’s intention ? This would subject the legal rights of land proprietors to be disposed of by the uncertainty of conjecture, instead of having them secured by the settled rules or operation of law. When a party claims by the statute, he is required to shew at what time he took possession of the land, and how long he has held it: and when a tenant claims to hold adversely, he must shew when that intention was made *235 known to his landlord; otherwise he might acquire title j by an evasive or secret abuse of a trust, instead of an open* claim as a trespasser. It is reasonable to suppose that every one will vindicate his rights when they are openly invaded ; but no one can take care of them when they are secretly undermined. It would be unsafe to suffer the possession to assume such a character as one party alone should give i.t, without the knowledge, control or consent of the other; and such would be the result, if Whaley’s design alone should prevail, secretly entertained and unknown to Edings.
There is nothing in this opinion which can conflict with those decisions in which it has been held that a child going into possession' of land under a parol gift of a parent, may hold by the statute .of limitations; for, in those cases, the relation of landlord and tenant never existed or was acknowledged. The son in those cases took possession of the land as his own, and held it without any acknowledgment of title in another, and between whom and his parent there was no privity of tenure at any period of the possession.
But in this case the jury have found that Whaley entered and held as a mere tenant at will, by Edings’s title. As well from the finding as the evidence itself, we are satisfied with the verdict, and refuse the motion for a new trial.
Evans, J., concurred.